

**U.S. Department of Justice**

Environment and Natural Resources Division

90-1-24-04346

*Law and Policy Section*
*P.O. Box 7415*
*Ben Franklin Station*
*Washington, DC  20044-7415*

*Telephone (202) 514-1442*
*Facsimile (202) 514-4231*

January 19, 2017

Clerk of Court
Office of the Clerk
United States District Court
501 I Street, Room 4-200
Sacramento, CA 95814

Re:     California Sportsfishing Protection Alliance v. Lake Oroville Marina, LLC, United States District Court for the Eastern District of California, No. 2:16-cv-01595 (Sacramento)

Dear Clerk of Court:

I am writing to notify you that the United States has reviewed the proposed consent decree in this action and has no objection to the Court's dismissal of this case in accordance with the terms of the proposed consent decree.

On December 6, 2016, the Citizen Suit Coordinator for the Department of Justice received a copy of the proposed consent decree in the above-referenced case for review pursuant to the Clean Water Act, 33 U.S.C. § 1365(c)(3).  This provision provides, in relevant part:

No consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator.

See also 40 C.F.R. § 135.5 (service on Citizen Suit Coordinator in the U.S. Department of Justice).  A settlement that does not undergo this federal review process is at risk of being void.

In its review, the United States seeks to ensure that the proposed consent decree complies with the requirements of the relevant statute and is consistent with its purposes.  For example, if the violating party has been out of compliance with statutory or permit requirements, the consent judgment should require that party to come into prompt compliance and should include a civil penalty, enforceable remedies, injunctive relief, and/or a supplemental environmental project (SEP) payment sufficient to deter future violations, or combinations of the above.

In its complaint, Plaintiff California Sportfishing Protection Alliance ("CSPA") alleged violations of Sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342, for the unlawful discharge of pollutants and violations of storm water permit requirements at a 4-acre facility that includes a marina, a boat repair and maintenance shop, and equipment storage yard located at 801 Bidwell Canyon Road, in Oroville, California. The proposed consent decree also addresses claims brought under state law. In particular, the United States notes that Plaintiff filed a claim under California's Safe Drinking Water and Toxic Enforcement Act (aka Proposition 65), and seeks civil penalties under California law. Plaintiffs represent that, pursuant to California law, they receive a share of civil penalties achieved through their Proposition 65 claim. In paragraph II(3) and II(4) of the proposed Consent Agreement the parties agree that Defendants will pay $20,000 as a civil penalty under Proposition 65, and will pay an additional sum of $15,000 in lieu of further civil penalties under Proposition 65. Because this agreement also provides for robust injunctive relief, compliance monitoring, and funding for mitigation projects, as permitted under the Clean Water Act, the United States does not object to the structure of this Consent Agreement.

In terms of injunctive relief, the proposed settlement agreement provides that defendant will come into compliance with the general permit, the Clean Water Act, and state law. The defendant will also implement specific storm water best management practices as outlined in Section I(2)(a-n). The defendant will also amend the facility's stormwater pollution prevention plan to incorporate these best management practices; conduct sampling and monitoring; and allow for up to four physical inspections of the facility. If sampling fails to occur or exceedances continue at the facility, the proposed consent decree provides for the defendant to prepare an action memorandum detailing steps to address the violations.

The proposed consent decree also provides that Defendants will reimburse CSPA in the amount of $67,500 to defray CSPA's reasonable investigative, expert, consultant and attorneys' fees and costs, and all other costs incurred as a result of investigating the activities at the Facility. Defendants will also contribute a total of $12,500 to plaintiff's compliance monitoring fund.

The proposed settlement further provides that the Defendant shall make a payment to the Rose Foundation in the amount of $35,000 for a SEP to fund environmental project activities that will improve water quality in Lake Oroville, the Feather River or the Sacramento-San Joaquin Delta. Where a proposed settlement agreement provides for the possible payment of sums to a third party that is to undertake a SEP, the United States ordinarily requests that the third party provide a letter to the Court and to the United States representing that it is a 501(c)(3) tax-exempt entity and that it (1) has read the proposed settlement agreement; (2) will spend any monies it receives under the proposed settlement agreement for the purposes specified in the agreement; (3) will not use any money received under the proposed settlement agreement for political lobbying activities; and (4) will submit to the Court, the United States, and the parties a letter describing how the SEP funds were spent.

The United States received a letter, dated December 13, 2016, from the Rose Foundation a letter confirming that all funds received by the organization as a result of the proposed settlement agreement would be used solely for the purpose outlined in the decree and that The Rose Foundation agrees not to use any of the funds it receives to conduct a SEP to fund political

lobbying activities; a copy of that letter is attached.  The United States believes that this letter will help to ensure that any monies expended under the proposed settlement agreement will be used in a manner that furthers the purposes of the Act, and that is consistent with the law and the public interest.

The United States affirms for the record that it is not bound by this settlement.  See, e.g., Hathorn v. Lovorn, 457 U.S. 255, 268 n.23 (1982) (Attorney General is not bound by cases to which he was not a party); Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found. Inc., 484 U.S. 49, 60 (1987) (explaining that citizen suits are intended to "supplement rather than supplant governmental action"); Sierra Club v. Elec. Controls Design, 909 F.2d 1350, 1356 n.8 (9th Cir. 1990) (explaining that the United States is not bound by citizen suit settlements, and may "bring its own enforcement action at any time"); 131 Cong. Rec. 15,633 (June 13, 1985) (statement of Senator Chafee, on Clean Water Act section 505(c)(3), confirming that the United States is not bound by settlements when it is not a party).  The United States also notes that, if the parties subsequently propose to modify any final consent judgment entered in this case, the parties should so notify the United States, and provide a copy of the proposed modifications, forty-five days before the Court enters any such modifications.  See 33 U.S.C. §1365(c)(3).

We appreciate the attention of the Court.  Please contact the undersigned at 202-514-2868 if you have any questions.

<div style="margin-left: 50%;">

Sincerely,

/s/ Matthew Oakes
Matthew Oakes, Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Law and Policy Section
P.O. Box 7415
Washington, D.C.  20044-7415

</div>

cc:      Counsel of Record through ECF

Attachment